## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

SAMUEL CARLISLE,

                Plaintiff,

    v.

CENTENNIAL RESOURCE
DEVELOPMENT, INC.,
STEVEN J. SHAPIRO,
MAIRE A. BALDWIN,
JEFFREY H. TEPPER,
MATTHEW G. HYDE,
VIDISHA PRASAD,
PIERRE F. LAPEYRE, JR.,
DAVID M. LEUSCHEN,
SEAN R. SMITH, and
ROBERT M. TICHIO,

                Defendants.

Case No. _____

---

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND

Plaintiff Samuel Carlisle ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.    This is a stockholder action brought by Plaintiff against Centennial Resource Development, Inc. ("Centennial" or the "Company") and the members of Centennial's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),

and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Centennial with Colgate Energy Partners III, LLC ("Colgate") (the "Proposed Transaction").

2.      On May 19, 2022, Centennial entered into a Business Combination Agreement ("Merger Agreement") with its wholly-owned subsidiary Centennial Resource Production, LLC ("CRP"), Colgate, and Colgate Energy Partners III MidCo, LLC (the "Colgate Unitholder"), pursuant to which, CRP will merge with and into Colgate, with CRP surviving the merger (the "Surviving Company") and continuing as a subsidiary of Centennial.  Pursuant to the terms of the Merger Agreement, CRP membership interests will be converted into a number of units in the Surviving Company equal to the number of shares of Centennial outstanding Class A common stock and the Colgate Unitholder's sole membership interest in Colgate will be exchanged for 269,300,000 shares of Centennial Class C common stock, 269,300,000 additional Surviving Company units, and $525,000,000.

3.      Following the completion of the Proposed Transaction: (i) the Company's existing shareholders will own 100% of Centennial's outstanding Class A common stock and approximately 51% of its total outstanding Class A common stock and Class C common stock taken together (or approximately 53% on a fully diluted basis); (ii) the Company will own approximately 51% of the Surviving Company; and (iii) the Colgate Unitholder will own approximately 49% of the Surviving Company, 100% of Centennial's outstanding Class C common stock and approximately 49% of its total outstanding Class A common stock and Class C common stock taken together (or approximately 47% on a fully diluted basis).

4.      Under the Merger Agreement, Centennial is required to issue additional shares of Centennial Class C common stock (the "Share Issuance"), which will increase the amount of

Company common stock outstanding by approximately 94%. As a Nasdaq listed company, Centennial is required by Nasdaq listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock. Thus, the Proposed Transaction is contingent upon Centennial shareholders voting to approve the proposed Share Issuance.

5.      On July 28, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Centennial stockholders vote their shares in favor of the Share Issuance and the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's and Centennial's financial projections; and (ii) the financial analyses performed by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi").

6.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Centennial stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

7.      The special meeting for Centennial stockholders to vote on the Proposed Transaction is currently scheduled for August 29, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Centennial's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

9.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Centennial's principal executive offices are located in this District, rendering venue in this District appropriate.

## THE PARTIES

11.      Plaintiff is, and has been at all relevant times, the owner of shares of Centennial common stock.

12.      Defendant Centennial is a Delaware corporation, with its principal executive offices located at 1001 17th Street, Suite 1800, Denver, Colorado 80202.  Centennial's shares trade on the Nasdaq Capital Market under the ticker symbol "CDEV."

13.      Defendant Steven J. Shapiro has been Chairman of the Board and a director of the Company at all relevant times.

14.      Defendant Maire A. Baldwin has been a director of the Company at all relevant times.

15.      Defendant Jeffrey H. Tepper has been a director of the Company at all relevant times.

16.      Defendant Matthew G. Hyde has been a director of the Company at all relevant times.

17.     Defendant Vidisha Prasad has been a director of the Company at all relevant times.

18.     Defendant Pierre F. Lapeyre, Jr. has been a director of the Company at all relevant times.

19.     Defendant David M. Leuschen has been a director of the Company at all relevant times.

20.     Defendant Sean R. Smith has been Chief Executive Officer and a director of the Company at all relevant times.

21.     Defendant Robert M. Tichio has been a director of the Company at all relevant times.

22.     Defendants identified in paragraphs 13-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.     Centennial is an independent oil and natural gas company that focuses on the development of crude oil and related liquids-rich natural gas reserves in the United States.  The Company's assets primarily focus on the Delaware Basin, a sub-basin of the Permian Basin. Centennial's properties include acreage blocks primarily in Reeves County, West Texas and Lea County, New Mexico.  As of December 31, 2021, it leased or acquired approximately 73,675 net acres; and owned 991 net mineral acres in the Delaware Basin.  The Company was formerly known as Silver Run Acquisition Corporation and changed its name to Centennial Resource Development, Inc. in October 2016.

**The Proposed Transaction**

24.     On May 19, 2022, Centennial announced that it had entered into the Proposed Transaction, stating, in relevant part:

DENVER and MIDLAND, Texas, May 19, 2022 -- Centennial Resource Development, Inc. ("Centennial" or the "Company") (NASDAQ: CDEV) and Colgate Energy Partners III, LLC ("Colgate") today announced they have entered into an agreement to combine in a merger of equals transaction. The combined company will be the largest pure-play E&P company in the Delaware Basin with approximately 180,000 net leasehold acres, 40,000 net royalty acres and total current production of approximately 135,000 Boe/d. The combined company plans to leverage its high-quality, scaled asset base to drive leading shareholder returns.

**Key Highlights**

- High-quality, complementary asset base with differentiated inventory depth to support sustainable free cash flow growth

- Positioned to significantly increase cash returns to shareholders, with over $1 billion of expected free cash flow1 in 2023 at current strip prices

- Highly accretive to key financial metrics, including cash flow, free cash flow and net asset value per share

- Strong balance sheet with expected leverage2 below 1.0x at year-end 2022

- Sean Smith to serve as Executive Chair of the Board; Will Hickey and James Walter to serve as Co-CEOs

- Significant equity ownership of combined management team aligns with shareholders

- Shared commitment to prioritizing ESG with continued focus on reducing environmental impact

**Management Commentary**

"This transformative combination significantly increases scale and drives accretion across all our key financial and operating metrics. Colgate's complementary, high-margin assets are a natural fit for Centennial, creating the largest pure-play E&P company in the Delaware Basin," said Sean Smith, Chief Executive Officer of Centennial. "Importantly, the combined company is expected to provide shareholders with an accelerated capital return program through a fixed dividend coupled with a share repurchase plan. We are excited to partner with Colgate as we share a common vision for the pro forma company that includes a strong balance

sheet, a disciplined investment program to drive cash flow and a robust return-of-capital program."

"The Colgate and Centennial teams have each demonstrated a track record of execution through the years, and we are excited to assume leadership roles in the new company to build upon that success and guide the next phase of value creation. Both companies have established strong financial and operational cultures, and we expect the combined company will be a top-tier, low-cost operator that is able to deliver better margins and shareholder returns," said Will Hickey, Co-CEO of Colgate.

"The merger of Colgate and Centennial is compelling from a financial, operational and strategic standpoint, establishing a leading Permian Basin independent. We believe the pro forma company is positioned to maximize returns for our new investor base, with our combined management team bringing a track record of operational excellence and strategic value creation. Management's significant ownership in the combined company should give investors confidence that long-term value creation will always be our top priority," said James Walter, Co-CEO of Colgate.

**Transaction Details**

The approximately $7.0 billion merger of equals values Colgate at approximately $3.9 billion and is comprised of 269.3 million shares of Centennial stock, $525 million of cash and the assumption of approximately $1.4 billion of Colgate's outstanding net debt. Given existing cash balances and interim free cash flow, the company expects its net debt-to-LTM EBITDAX ratio at closing to be approximately 1.0x. The cash consideration and the repayment of Colgate's outstanding credit facility borrowings at closing are expected to be funded with cash on hand and borrowings under an upsized revolving credit facility.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the second half of 2022. The company intends to provide detailed forward-looking guidance for the remainder of 2022 at or shortly after closing of the transaction.

**Differentiated E&P Platform**

- **Return of Capital.** The scaled cash flow base and balance sheet of the combined company provides clear line of sight to significant near-term shareholder returns.

- **Combining Best Practices.** The combined company intends to integrate leading-edge operational practices from two, highly skilled teams with proven track records. This leveraging of best practices from both organizations positions the combined company for continued success.

- **Deep Inventory of High-Return Locations.** The combined company's adjacent acreage position, coupled with its high-return inventory supports a highly capital-efficient development plan and provides operational flexibility. Upon closing, the combined company will have over 15-years of drilling inventory, assuming its current drilling pace.

- **Maximizing Shareholder Alignment.** Upon closing, the combined company will have one of the largest management ownership interests of any public E&P company, with the management team owning approximately 12% of the pro forma total shares outstanding. As a result, the company will be highly focused on increasing shareholder value.

- **Commitment to ESG and Sustainability.** As both companies have demonstrated significant reductions in emissions intensity and natural gas flaring to date, ESG excellence will continue to be a core competency of the combined company.

**Colgate Overview**

Founded in 2015, Colgate has exhibited an exceptional value-creation track record under the leadership of its current Co-CEOs, Will Hickey and James Walter. Colgate has total current production of approximately 70,000 Boe/d and possesses a high-quality acreage position consisting of approximately 105,000 net leasehold acres and 25,000 net royalty acres in the Delaware Basin, with its position concentrated in Reeves and Ward Counties, Texas and Eddy County, New Mexico. The company has grown through a combination of organic development and strategic acquisitions that have increased scale and further enhanced equity returns. The company's operated acreage position is approximately 90% operated, with a 75% average working interest and an advantaged net revenue interest of 78%, normalized to an 8/8ths basis.

**Leadership and Governance**

Upon closing, Sean Smith will serve as Executive Chair of the Board of Directors of the newly combined business, and Will Hickey and James Walter will lead the company as Co-CEOs and will serve on the Board of Directors. Matt Garrison, Centennial's current Chief Operating Officer, and George Glyphis, Centennial's current Chief Financial Officer, will continue to serve in their respective roles at the combined company. The combined company will be headquartered in Midland, with key positions filled by representatives from both companies. The Denver office will remain open for the foreseeable future to ensure continuity and continued operational success. The combined company will operate under a new name and stock ticker symbol, which are expected to be announced prior to closing.

Following the merger, Centennial's Board of Directors will be expanded to eleven directors, consisting of Sean Smith, Will Hickey, James Walter, William Quinn (Founder and Managing Partner of Pearl Energy Investments) and Robert Tichio (Partner of Riverstone Holdings LLC), in addition to six independent directors.

"Centennial and Colgate are a clear strategic fit, combining two complementary acreage footprints in the core of the Delaware Basin. We are firm believers in the combined management team and their strategy, and we look forward to creating additional long-term value for stakeholders," said William Quinn, Founder and Managing Partner of Pearl.

Immediately following the closing, existing Centennial shareholders will own approximately 53% of the combined company, and existing Colgate owners will own approximately 47% of the combined company. Centennial's largest shareholder, Riverstone, which currently owns approximately 25% of Centennial's outstanding shares, has executed a Voting and Support Agreement in connection with the transaction. The closing of the merger is subject to customary closing conditions, including approval by Centennial shareholders and regulatory approvals.

**Advisors**

Citi is serving as financial advisor and Latham & Watkins LLP is serving as legal advisor to Centennial. Credit Suisse Securities (USA) LLC and Jefferies LLC are serving as financial advisors and Kirkland & Ellis LLP is serving as legal advisor to Colgate.

## The Materially Incomplete and Misleading Proxy Statement

25.     On July 28, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC.  The Proxy Statement, which recommends that Centennial stockholders vote their shares in favor of the Share Issuance and the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's and Centennial's financial projections; and (ii) the financial analyses performed by the Company's financial advisor, Citi.

*Material Misrepresentations and/or Omissions Concerning Centennial's and Colgate's Financial Projections*

26.     The Proxy Statement fails to disclose material information concerning the financial projections for Centennial and Colgate.

27.     For example, with respect to Centennial management's forecasts for Centennial and Colgate using both the NYMEX strip pricing and Wall Street consensus pricing, the Proxy Statement fails to disclose the line items underlying the calculation of: (i) EBITDAX; (ii) Cash Flow from Operations (Pre-NWC); (iii) Free Cash Flow (Levered); and (iv) Free Cash Flow (Unlevered).

28.     The Proxy Statement similarly fails to disclose the "information and data provided to or discussed with [Citigroup Global Markets Inc. ("Citi")] by [Centennial] management relating to potential strategic implications, cost savings, tax benefits and other financial and operational benefits (including the amount, timing and achievability thereof) anticipated by such management to result from the [Proposed Transaction]." *See* Proxy Statement at 87.

*Material Misrepresentations and/or Omissions Concerning Citi's Financial Analyses*

29.     The Proxy Statement fails to disclose material information concerning the financial analyses performed by Citi.

30.     With respect to Citi's *Discounted Cash Flow Analysis* of Colgate and Centennial, the Proxy Statement fails to disclose a quantification of: (i) the respective terminal values for Colgate and Centennial; and (ii) the inputs and assumptions underlying the discount rate range of 10.6% to 11.9%.

31.     With respect to Citi's *Net Asset Value Analysis* of Colgate and Centennial, the Proxy Statement fails to disclose a quantification of: (i) the unlevered, after-tax free cash flows that Colgate was projected to generate from Colgate's proved developed reserves, drilled uncompleted reserves and currently undeveloped reserves in Texas and New Mexico, net of

general and administrative expenses (ii) the unlevered, after-tax free cash flows that Centennial was projected to generate from Centennial's proved developed reserves and currently undeveloped reserves in Texas and proved developed reserves, drilled uncompleted reserves and currently undeveloped reserves in New Mexico, net of general and administrative expenses; and (iii) the inputs and assumptions underlying the discount rate range of 10.6% to 11.9%.

32.     With respect to Citi's *Selected Public Companies Analysis* of Colgate and Centennial, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Citi, respectively.

33.     With respect to Citi's *Selected Precedent Transactions Analysis* of Colgate, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Citi.

34.     With respect to Citi's *Illustrative Has/Gets Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the potential strategic implications, cost savings, tax benefits and other financial and operational benefits anticipated by the management of Centennial to result from the merger; (ii) certain debt to be incurred or assumed by Centennial in connection with the merger as estimated by the management of Centennial; and (iii) calendar year 2023 estimated cash flow and calendar year 2023 estimated free cash flow yield of Centennial on a pro forma basis utilized in the analysis.

35.     With respect to Citi's analysis of Wall Street research analysts' price targets for the Company's Class A common stock, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

36.     The Proxy Statement further fails to disclose the illustrative pro forma financial effects of the Proposed Transaction on Centennial's calendar year 2023 and calendar year 2024

estimated cash flow per share and calendar year 2023 and calendar year 2024 estimated free cash flow per share observed by Citi. *See id.* at 96.

37.     In sum, the omission of the above-referenced information renders statements in the "Certain Centennial Projected Financial Information" and "Opinion of Centennial's Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.   Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Centennial will be unable to make a sufficiently informed decision in connection with the Share Issuance and the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Centennial**

38.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Centennial is liable as the issuer of these statements.

40.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

41.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

43.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Share Issuance and the Proposed Transaction.

44.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Centennial within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Centennial and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Share Issuance and the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

50.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Centennial, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Share Issuance and the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 10, 2022                    **ACOCELLI LAW, PLLC**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*